# 12-0497-bk

# United States Court of Appeals
## for the
## Second Circuit

GGP LIMITED PARTNERSHIP,

*Debtor-Appellant,*

– v. –

THE COMPTROLLER OF THE STATE OF NEW YORK
as Trustee of the Common Retirement Fund,

*Creditor-Appellee.*

_____

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR DEBTOR-APPELLANT

MARCIA L. GOLDSTEIN
GARY T. HOLTZER
ADAM P. STROCHAK
WEIL, GOTSHAL & MANGES LLP
*Attorneys for Reorganized Debtor-Appellant*
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

# TABLE OF CONTENTS

Preliminary Statement.............................................................................1

Argument ...............................................................................................2

I.   Citation to Sections 363(*l*) and 541(c)(1)(B) Supports GGP LP's Argument Below and in This Court That NYSCRF Has No Allowable Claim for Default-Rate Interest Based Solely on an *Ipso Facto* Clause........2

II.  The Bankruptcy Code Governs Allowance of Claims and Expressly Disallows Enforcement of the *Ipso Facto* Clause at Issue ............................5

    A.   *Ruskin v. Griffiths* Does Not Support NYSCRF's Claim for Interest at the Default Rate.....................................................5

    B.   NYSCRF Does Not Refute That Sections 541(c)(1)(B) and 363(*l*) Expressly Invalidate *Ipso Facto* Clauses ...................................9

    C.   Congress Evinced Clear Intent in the Bankruptcy Code and Legislative History To Broadly Invalidate *Ipso Facto* Clauses.........16

III. Section 1123 Does Not Compel Payment of Interest at the Default Rate ...................................................................................................18

Conclusion ...........................................................................................21

Certificate of Compliance .......................................................................22

# TABLE OF AUTHORITIES

## CASES

*Abbott Bank-Thedford v. Hanna (In re Hanna)*,
912 F.2d 945 (8th Cir. 1990) ...........................................................................13

*Butner v. United States*,
440 U.S. 48 (1979).......................................................................................15

*Chartschlaa v. Nationwide Mut. Ins. Co.*,
538 F.3d 116 (2d Cir. 2008) .....................................................................10, 12

*Conn. Bar Ass'n v. United States*,
620 F.3d 81 (2d Cir. 2010) ...............................................................................5

*Eastman Kodak Co. v. STWB, Inc.*,
452 F.3d 215 (2d Cir. 2006) ..........................................................................3, 5

*Flanigan v. Samalex Trust (In re Flanigan)*,
374 B.R. 568 (Bankr. W.D. Pa. 2007) .................................................................7

*In re Dow Corning Corp.*,
244 B.R. 678 (Bankr. E.D. Mich. 1999)................................................................9

*In re Farley, Inc.*,
146 B.R. 739 (Bankr. N.D. Ill. 1992) ..................................................................7

*In re Federated Dep't Stores, Inc.*,
131 B.R. 808 (S.D. Ohio 1991) ........................................................................7

*In re Gaslight Vill., Inc.*,
6 B.R. 871 (Bankr. D. Conn. 1980) .............................................................13, 14

*In re Hooker Invs., Inc.*,
145 B.R. 138 (Bankr. S.D.N.Y. 1992)..................................................................7

*In re Johnston*,
2004 WL 3019472 (Bankr. N.D. Iowa Dec. 20, 2004) .......................................20

*In re Koreag, Controle et. Revision S.A.*,
961 F.2d 341 (2d Cir. 1992) ............................................................................2

*In re Lehman Bros. Holdings Inc.*,
    452 B.R. 31 (Bankr. S.D.N.Y. 2011)....................................................................18

*In re Moody Nat'l SHS Houston H, LLC*,
    426 B.R. 667 (Bankr. S.D. Tex. 2010) ............................................................20

*In re 1 Ashbury Court Partners, L.L.C.*,
    2011 WL 4712010 (Bankr. D. Kan. Oct. 5, 2011) ............................................20

*In re PPI Enters. (U.S.), Inc.*,
    324 F.3d 197 (3d Cir. 2003) ................................................................................7

*In re Sagamore Partners, Ltd.*,
    2012 WL 2856104 (Bankr. S.D. Fla. July 10, 2012)........................................20

*In re W.R. Grace & Co.*,
    475 B.R. 34 (D. Del. 2012)................................................................................16

*Kamagate v. Ashcroft*,
    385 F.3d 144 (2d Cir. 2004) ................................................................................4

*Katzenstein v. VIII SV5556 Lender, LLC*
    *(In re Saint Vincent's Catholic Med. Ctrs. of N.Y.)*,
    440 B.R. 587 (Bankr. S.D.N.Y. 2010)........................................................12, 13

*Lewis Bank v. Mfrs. Nat'l Bank*,
    364 U.S. 603 (1961)..........................................................................................15

*LTV Corp. v. Aetna Cas. & Sur. Co. (In re Chateaugay Corp.)*,
    116 B.R. 887 (Bankr. S.D.N.Y. 1990)..............................................................12

*Midland Cogeneration Venture Ltd. P'ship v. Enron Corp.*
    *(In re Enron Corp.)*,
    419 F.3d 115 (2d Cir. 2005) ................................................................................4

*Official Comm. of Unsecured Creditors v. Dow Corning Corp.*
    *(In re Dow Corning Corp.)*,
    456 F.3d 668 (6th Cir. 2006) ..............................................................................8

*Official Comm. of Unsecured Creditors v. PSS Steamship Co., Inc.*
    *(In re Prudential Lines Inc.)*,
    928 F.2d 565 (2d Cir. 1991) ..............................................................................10

*Patterson v. McLean Credit Union*,
   491 U.S. 164 (1989)...................................................................7

*Rake v. Wade*,
   508 U.S. 464 (1993)..................................................................19

*Rose v. General Motors Acceptance Corp. (In re Rose)*,
   21 B.R. 272 (Bankr. D.N.J. 1982) ....................................14, 15

*Ruskin v. Griffiths*,
   269 F.2d 827 (2d Cir. 1959) ...................................5, 6, 7, 8

*Suncal Cmtys. I L.L.C. v. Lehman Commercial Paper, Inc.*,
   402 Fed. Appx. 634 (2d Cir. 2010)................................5, 17

*United States v. McCoy*,
   407 Fed. Appx. 514 (2d Cir. 2010) ..................................4, 5

*Yee v. City of Escondido*,
   503 U.S. 519 (1992)..................................................................3, 5

## STATUTES & RULES

11 U.S.C. § 363.............................................................................10

11 U.S.C. § 363(*l*) ................................................................*passim*

11 U.S.C. § 365.............................................................................18

11 U.S.C. § 365(e) ........................................................................17

11 U.S.C. § 365(e)(1)....................................................................14

11 U.S.C. § 502...........................................................................3, 5

11 U.S.C. § 502(b) ..........................................................................1

11 U.S.C. § 502(b)(6)......................................................................7

11 U.S.C. § 506(b) ..............................................................1, 3, 5, 19

11 U.S.C. § 521.............................................................................11

iv

11 U.S.C. § 541 ................................................................*passim*

11 U.S.C. § 541(a) ......................................................................10

11 U.S.C. § 541(a)(1) ..................................................................10

11 U.S.C. § 541(c) ......................................................................13

11 U.S.C. § 541(c)(1)(B) ......................................................*passim*

11 U.S.C. § 1123 ........................................................................18

11 U.S.C. § 1123(a) ....................................................................19

11 U.S.C. § 1123(d) ........................................................18, 19, 20

11 U.S.C. § 1129(a)(7) ..........................................................18, 19

11 U.S.C. § 1129(b) ..............................................................18, 19

Fed. R. Bankr. P. 1007 ..............................................................11

## Other Authorities

H. Rep. No. 103-834 (1994) ......................................................19

H. Rep. No. 95-595 (1977) ..................................................10, 17

S. Rep. No. 95-989 (1978) ........................................................17

## PRELIMINARY STATEMENT[1]

The Bankruptcy Code renders unenforceable any pre-bankruptcy "contractual bargain" of the parties embodied in the *ipso facto* clause that automatically accelerates the loan and triggers default-rate interest upon a bankruptcy filing. The allowed amount of an oversecured creditor's claim in a bankruptcy case is determined under sections 502(b) and 506(b) of the Bankruptcy Code. Whether the claim is treated as impaired or unimpaired under a chapter 11 plan, arises under an executory contract or a non-executory contract, arises under a contract that is matured or unmatured, or is against a solvent or an insolvent debtor, does not change the statutory answer: The statutory framework enacted by Congress flatly prohibits enforcement of an *ipso facto* clause as the sole trigger for a claim for default-rate postpetition interest. The stroke of a pen creating purported claims, *ipso facto*, in a prepetition agreement cannot override the statutory mandates for claims allowance in the Bankruptcy Code.

Exalting GGP LP's solvency as the determinative factor in calculating the postpetition interest rate payable to an oversecured creditor, NYSCRF led the Bankruptcy Court to a decision that violates the Bankruptcy Code. NYSCRF's arguments perpetuate the Bankruptcy Court's improper exercise of equity, turning fundamental bankruptcy principles on their head and imposing a default-interest

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in GGP LP's opening brief.

rate toll on debtors, such as GGP LP, who proactively seek the protection of chapter 11 before the lender has triggered any contractual obligation to pay default-rate interest. Suggesting that the result required by the Bankruptcy Code would be unfair to NYSCRF and speculating that it would result in higher interest rates for borrowers are policy considerations that have no role in the Court's decision when Congress has already spoken clearly in the Bankruptcy Code.

**ARGUMENT**

**I.    CITATION TO SECTIONS 363(*l*) AND 541(C)(1)(B) SUPPORTS GGP LP'S ARGUMENT BELOW AND IN THIS COURT THAT NYSCRF HAS NO ALLOWABLE CLAIM FOR DEFAULT-RATE INTEREST BASED SOLELY ON AN *IPSO FACTO* CLAUSE.**

Sections 363(*l*) and 541(c)(1)(B) of the Bankruptcy Code demonstrate why the Bankruptcy Court's sweeping validation of *ipso facto* clauses is wrong as a matter of statutory construction.[2]  Examination of the Bankruptcy Code's entire framework for the treatment of *ipso facto* clauses confirms that the general rule is that *ipso facto* clauses generally are unenforceable with only narrow exceptions. NYSCRF turns that rule upside down, making *ipso facto* clauses in loan agreements generally enforceable. GGP LP has consistently argued, at every stage

---

[2] NYSCRF contends that the Bankruptcy Court's equitable considerations were not clearly erroneous, *see* NYSCRF Br. at 14, ignoring that, if the Bankruptcy Code invalidates *ipso facto* clauses, equity cannot override that congressional determination. The proper construction of the Bankruptcy Code presents a pure question of law reviewed *de novo. See In re Koreag, Controle et. Revision S.A.*, 961 F.2d 341, 347–48 (2d Cir. 1992).

2

of these proceedings, that default-rate interest cannot be triggered by an *ipso facto* clause and that a ruling to the contrary would violate the statutory framework and relevant case law.  *See, e.g.*, A-1776 – A-1779; A-1809.

GGP LP is not presenting any new claim or defense based on sections 363(*l*) and 541(c)(1)(B), as NYSCRF wrongly asserts.  *See* NYSCRF Br. at 15–16. Reference to those particular provisions in GGP LP's opening brief illustrates why the Bankruptcy Court's decision is wrong as matter of statutory construction when viewed in light of the interrelated sections of the Bankruptcy Code that address *ipso facto* clauses.  Sections 363(*l*) and 541(c)(1)(B) are "additional support" for a claim GGP LP has made from the beginning—that *ipso facto* clauses are unenforceable for purposes of calculating postpetition interest under sections 502 and 506(b), which are the Bankruptcy Code sections that determine whether and the extent to which a secured creditor has an allowed claim.  *Eastman Kodak Co. v. STWB, Inc.*, 452 F.3d 215, 221 (2d Cir. 2006) (holding appellant did not waive argument based on ERISA regulation not cited below, because although "this court ordinarily will not hear arguments not made to the district court . . . appeals courts may entertain additional support that a party provides for a proposition presented below") (quoting *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992) ("Once a

federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments made below.")). [3]

Moreover, NYSCRF acknowledges that GGP LP did in fact cite to sections 363(*l*) and 541(c)(1)(B) at the Bankruptcy Court level. *See* NYSCRF Br. at 15–16 (citing A-1776 n.6.). When NYSCRF contended below that *ipso facto* clauses are prohibited only in executory contracts and unexpired leases, A-1502, GGP LP cited sections 363(*l*) and 541(c)(1)(B) in response as statutory examples that demonstrate the falsity of NYSCRF's categorical assertion. *See* A-1776 n.6. Because the Bankruptcy Court adopted NYSCRF's categorical position, SPA-11 – SPA-12, GGP LP on appeal has placed greater emphasis on sections 363(*l*) and 541(c)(1)(B) to demonstrate precisely how various sections of the Bankruptcy Code interrelate to prohibit enforcement of the *ipso facto* clause.

Finally, although NYSCRF contends that an argument raised below in a footnote is insufficient to preserve an issue for appeal, *see* NYSCRF Br. at 15–16, this contention rests on the same false premise that negates NYSCRF's other

---

[3] *See also United States v. McCoy*, 407 Fed. Appx. 514, 516 (2d Cir. 2010) (holding citation of new authority "was not a new argument but rather supplied further support for a contention that the Government consistently pressed"). NYSCRF's cases, by contrast, involve appellants who changed positions on appeal or requested different substantive relief, not appellants who merely cited additional authority for the same argument made below and are thus inapposite. *See* NYSCRF Br. at 15 (citing *Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.)*, 419 F.3d 115, 126–27 (2d Cir. 2005); *Kamagate v. Ashcroft*, 385 F.3d 144, 151–52 (2d Cir. 2004).

waiver argument:  GGP LP's citation to sections 363(*l*) and 541(c)(1)(B) in a footnote did *not* raise a new issue separate and apart from GGP LP's core argument that a claim for default-rate postpetition interest based on an *ipso facto* clause is not an allowed claim under sections 502 and 506(b).  Moreover, the cases NYSCRF cites in support of its footnote-waiver theory are easily distinguishable.[4] Here, in contrast, GGP LP's claim that the *ipso facto* clause is unenforceable was a major facet of its briefing and oral argument below.  *See, e.g.*, A-1776 – A-1779, A-1870 – A-1876.  Regardless, citation to sections 363(*l*) and 541(c)(1)(B) on appeal is clearly permissible to demonstrate the error in the Bankruptcy Court's decision.  *Yee*, 503 U.S. at 534; *Kodak*, 452 F.3d at 221; *McCoy*, 407 Fed. Appx. at 516.

## II.    THE BANKRUPTCY CODE GOVERNS ALLOWANCE OF CLAIMS AND EXPRESSLY DISALLOWS ENFORCEMENT OF THE *IPSO FACTO* CLAUSE AT ISSUE.

### A.    *Ruskin v. Griffiths* Does Not Support NYSCRF's Claim for Interest at the Default Rate.

The Bankruptcy Code is clear—sections 541(c)(1)(B) and 363(*l*) each invalidate *ipso facto* clauses.  Notwithstanding an *ipso facto* clause that might

---

[4] *Connecticut Bar Ass'n v. United States*, 620 F.3d 81 (2d Cir. 2010), held only that the mere mention of the strict-scrutiny doctrine in a footnote was insufficient to preserve a substantive claim of a First Amendment access-to-courts violation. *Suncal Communities I L.L.C. v. Lehman Commercial Paper, Inc.*, 402 Fed. Appx. 634 (2d Cir. 2010), held that a one-sentence footnote alleging violation of the automatic stay was insufficient to preserve that claim for appeal.

effect a forfeiture or modification of a property right upon bankruptcy, a debtor's contract rights come into the bankruptcy estate and the debtor may continue to use them as it reorganizes its business.  Neither section of the Bankruptcy Code excepts solvent debtors from its ambit.

NYSCRF sidesteps the Bankruptcy Code's framework and urges this Court to extend its decision in *Ruskin v. Griffiths*,[5] decided under the predecessor Bankruptcy Act, and find that GGP LP's solvency at the end of its chapter 11 case requires payment of default-rate interest.  NYSCRF Br. at 29–30.  *Ruskin* does not support allowance of default interest merely because a debtor is solvent.  Rather, *Ruskin* stands for the proposition that, where a creditor has established a contractual entitlement to default interest otherwise enforceable under the Bankruptcy Code, equitable factors such as solvency factor *only* into a bankruptcy court's equitable evaluation whether to adjust that entitlement *downward*.  *See* 269 F.2d at 832.

Solvency and other equitable factors are irrelevant where, as here, no enforceable entitlement to default-rate interest exists in the first place.  Where the express provisions of the Bankruptcy Code invalidate the contractual basis for a creditor to receive default-rate interest, the solvency analysis set forth in *Ruskin* is

---

[5] 269 F.2d 827 (2d Cir. 1959).

6

inapplicable.  There is no "solvency exception" that overrides Congress's broad invalidation of *ipso facto* clauses.[6]

NYSCRF notes that *Ruskin* contained an *ipso facto* clause as a trigger for default-rate interest and asserts that it remains good law.  NYSCRF Br. at 28–30.  But because *Ruskin* was decided under the Bankruptcy Act,[7] it does not reflect the fundamental change regarding *ipso facto* clauses written into the law when

---

[6] That solvency *vel non* is not a factor in determining the attributes of a bankruptcy claim is consistent in the Bankruptcy Code.  For example, section 502(b)(6) limits the allowed claim of a creditor, capping damages recoverable by a landlord even when the debtor rejects a lease, and courts enforce that limitation even when the debtor proves solvent.  *See In re Federated Dep't Stores, Inc.*, 131 B.R. 808, 817 (S.D. Ohio 1991); *see also In re PPI Enters. (U.S.), Inc.*, 324 F.3d 197, 204 (3d Cir. 2003).  Just as adopting "an 'equitable' exception to § 502(b)(6) appears to be contrary to the text and purpose of the statute," *Flanigan v. Samalex Trust (In re Flanigan)*, 374 B.R. 568, 575 (Bankr. W.D. Pa. 2007), so too would it contravene the Bankruptcy Code to except solvent debtors from the prohibition on *ipso facto* clauses.  *Cf. In re Farley, Inc.*, 146 B.R. 739, 748 (Bankr. N.D. Ill. 1992) ("It is irrelevant to analysis under § 502(b)(6) whether [a debtor] is solvent or insolvent . . . Congress presumably weighed those considerations, and the § 502(b)(6) formula is the result of that consideration.").

[7] Cases decided under the prior Bankruptcy Act remain good law only to the extent the Bankruptcy Code did not substantively change the law.  *See Patterson v. McLean Credit Union*, 491 U.S. 164, 173 (1989) (reliance on prior caselaw is not justified where there is "intervening development of the law, through either the growth of judicial doctrine or further action taken by Congress" or "[w]here such changes have removed or weakened the conceptual underpinnings from the prior decision"); *see also In re Hooker Invs., Inc.*, 145 B.R. 138, 147 (Bankr. S.D.N.Y. 1992) (Bankruptcy Act cases "must and can be reconsidered in light of the changes in the governing law" brought about under the Bankruptcy Code).

Congress enacted the Bankruptcy Code.[8]  *Ruskin*, while continuing to be good law to the extent not inconsistent with the Bankruptcy Code, is also distinguishable on its facts.  The creditor in *Ruskin* did not rely solely on an *ipso facto* entitlement to default-rate interest; rather, the creditor there took an affirmative act—the delivery of a notice of acceleration pursuant to the loan documents—that it was allowed to deliver in accordance with the then-applicable Bankruptcy Act.  *Ruskin*, 269 F.2d at 829–30, 832.  *Ruskin*'s framework for analysis of default-rate interest claims may retain its vitality, but it cannot be extended to support allowing a claim for default-rate interest based solely on an *ipso facto* clause.

Moreover, NYSCRF's reliance upon *Official Committee of Unsecured Creditors v. Dow Corning Corp. (In re Dow Corning Corp.)*,[9] for the proposition that a solvent debtor should pay postpetition interest pursuant to its contract, even where the trigger is an *ipso facto* clause, is misplaced.  The Sixth Circuit in *Dow Corning* did not address the *ipso facto* clause issue—in fact, the Bankruptcy Court's opinion, on which the appeal was based, relied upon, among other sections, section 541(c)(1)(B) of the Bankruptcy Code, to state that "in determining the applicable [postpetition interest] rate, however, no effect is to be given to

---

[8] Congress generally invalidated *ipso facto* clauses in the Bankruptcy Code, subject to limited exceptions.  *See* GGP Br. at 25 n.21 (listing provisions that expressly enforce *ipso facto* clauses); Brief of Professor George W. Kuney as *Amicus Curiae* in Support of Appellant at 13 & n.13 (filed May 22, 2012).

[9] 456 F.3d 668 (6th Cir. 2006).

contractual provisions which purport to define as a default the filing of a voluntary petition for bankruptcy relief." *In re Dow Corning Corp.*, 244 B.R. 678, 696 (Bankr. E.D. Mich. 1999). The creditors in *Dow Corning* ultimately abandoned their *ipso facto* arguments at the Sixth Circuit, instead relying on the failure to pay principal and interest installments to demand default-rate interest. The court in *Dow Corning* held that a solvent debtor must pay default-rate interest when the contractual entitlement to it has been established without reliance on an *ipso facto* provision that is unenforceable under the Bankruptcy Code.

The Sixth Circuit in *Dow Corning* did not address, much less resolve, the key issue in this appeal: whether an *ipso facto* clause invalidated by the Bankruptcy Code may trigger default-rate interest solely because the debtor is solvent. Here, the Bankruptcy Code explicitly invalidates the *ipso facto* trigger for default-rate interest, and NYSCRF can point to nothing in *Dow Corning* that should lead this Court to reach a different conclusion, premised on a debtor's solvency or otherwise.

### B. NYSCRF Does Not Refute That Sections 541(c)(1)(B) and 363(*l*) Expressly Invalidate *Ipso Facto* Clauses.

The Bankruptcy Court's decision rested on the erroneous conclusion that "[*ipso facto*] clauses are not *per se* invalid in the Second Circuit *except where contained in an executory contract or unexpired lease*." SPA-13 (emphasis added). NYSCRF does not refute that Bankruptcy Code sections 363(*l*) and

541(c)(1)(B) combine to ensure that all of a debtor's contract rights (not just executory contracts and unexpired leases) come into the bankruptcy estate and may be used during the case without interference from any *ipso facto* clause. Instead, NYSCRF contends that sections 541 and 363 are inapplicable here because GGP LP's contract rights under the Homart Note were not "property of the estate." NYSCRF Br. at 24–25. But NYSCRF offers no supporting authority and fails to acknowledge, much less distinguish, GGP LP's authority for the uncontroversial proposition that contract rights "clearly fall within" section 541's broad definition. GGP LP Br. at 21 n.15 (citing *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008) ("It would be hard to imagine language that would be more encompassing than [section 541(a)'s] broad definition . . . . Contractual rights clearly fall within the reach of this section.") (internal citations omitted)). This Court has also held that Congress intended to "bring anything of value that the debtors have into the estate." *Official Comm. of Unsecured Creditors v. PSS Steamship Co., Inc. (In re Prudential Lines Inc.)*, 928 F.2d 565, 573 (2d Cir. 1991) (quoting H. Rep. No. 95-595, at 176, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6136)); *see also* 11 U.S.C. § 541(a)(1) (including as "property of the estate," subject to certain limitations, "property, wherever located, and by whomever held" that constitute "all legal or equitable interests of the debtor in property as of the commencement of the case").

Therefore, upon the filing of GGP LP's bankruptcy petition, once the Homart Note became "property of the estate" under section 541, section 363(*l*) invalidated the default provision because it impacted GGP LP's *use* of its property rights under the contract (including the non-default-rate-interest provision) and would have effected a "modification" of the loan if enforced, increasing interest expense by more than $11.6 million.  A-1900.

Moreover, GGP LP's schedules of assets and liabilities, filed in the bankruptcy cases, do not suggest otherwise, as NYSCRF erroneously suggests. NYSCRF Br. at 24.  Neither section 521 of the Bankruptcy Code nor Federal Rule of Bankruptcy Procedure 1007, which together establish a debtor's obligation to file a schedule of assets and liabilities, imposes any requirement to separately list each and every property interest that could constitute "property of the estate."  11 U.S.C. § 521; FED. R. BANKR. P. 1007.[10]  As is customary, the Homart Note—the entire agreement, not each and every *property interest* memorialized therein—was

---

[10] NYSCRF fails to note the customary Global Notes to the schedules:  "Nothing contained in the Schedules and Statements shall constitute a waiver of rights with respect to these chapter 11 cases . . . . *In addition, certain items reported in the Schedules and Statements could be included in more than one category.  In those instances, one category has been chosen to avoid duplication.  Further the designation of a category is not meant to be wholly inclusive or descriptive of the rights or obligations represented by such item.*  Moreover, the categories are included for ease of reference and are not controlling."  Fifth Amended Schedules of Assets and Liabilities re: GGP Limited Partnership, filed in *In re General Growth Properties, Inc.*, Case No. 09-11977 (ALG), [Docket No. 4398] (Feb. 16, 2010).

listed in Exhibit D-2 (Other Secured Debt) of the schedules of assets and liabilities. *See* Fifth Amended Schedules of Assets and Liabilities re: GGP Limited Partnership, Ex. D-2, filed in *In re General Growth Properties, Inc.*, Case No. 09-11977 (ALG), [Docket No. 4398] (Feb. 16, 2010). NYSCRF's restrictive view of property rights is contrary to well-established law that section 541 should be interpreted broadly and would put this Court on a slippery slope of picking and choosing which particular property interests, or even worse, which particular provisions of a contract, are property rights a debtor may use and which it may not.[11]

The cases NYSCRF cites are inapposite and its attempts to distinguish GGP LP's supporting authority are unavailing. For example, NYSCRF relies on *Katzenstein v. VIII SV5556 Lender, LLC (In re Saint Vincent's Catholic Medical Centers of New York)*, 440 B.R. 587, 600–02 (Bankr. S.D.N.Y. 2010), *see* NYSCRF Br. at 25–26, which held that section 541(c)(1)(B) did not invalidate an

---

[11] NYSCRF asserts that GGP LP cited no supporting authority for its property interest in the Homart Note, NYSCRF Br. at 24, but GGP LP cited two cases, including one from this Court, in its opening brief. GGP LP Br. at 21 n.15 (citing *Chartschlaa*, 538 F.3d at 122; *LTV Corp. v. Aetna Cas. & Sur. Co. (In re Chateaugay Corp.)*, 116 B.R. 887, 898 (Bankr. S.D.N.Y. 1990)). Attempting to shift the focus, NYSCRF argues that "[t]he *relevant* property interest GGP owns here . . . is its 50% membership interest in Homart II, pledged as collateral for the Homart Note," NYSCRF Br. at 25 (emphasis added), but NYSCRF fails to explain how GGP LP's property interests in the underlying collateral would make irrelevant its separate property interest in its contractual right to pay interest at the non-default rate.

*ipso facto* provision in a non-executory agreement.  440 B.R. at 602.  That court, however, did not reach (nor did it even consider) the interplay between sections 541(c) and 363(*l*) that provides the express statutory authority for invalidating the *ipso facto* clause in the Homart Note.  Therefore, like the Bankruptcy Court's decision here, *Saint Vincent's* failed to analyze all of the Bankruptcy Code provisions that work in tandem to invalidate *ipso facto* provisions in non-executory contracts.

Similarly, in attempting to distinguish *Abbott Bank-Thedford v. Hanna (In re Hanna)*, 912 F.2d 945, 951 n.8 (8th Cir. 1990), NYSCRF concedes the very point for which GGP LP cited that case, stating that "[t]here is no disagreement that section 363(*l*) invalidates *ipso facto* provisions that affect a debtor's right to use, sell or lease property."  NYSCRF Br. at 19.[12]  *Hanna* confirms that section 363(*l*) invalidates *ipso facto* provisions that purport to impact a debtor's use of property of the estate, even when the underlying contract is non-executory, such as the Homart Note.  NYSCRF acknowledges exactly that point.

NYSCRF also fails to distinguish *In re Gaslight Village, Inc.*, 6 B.R. 871 (Bankr. D. Conn. 1980), which involved an *ipso facto* provision in a non-executory

---

[12] NYSCRF's concession directly contradicts the Bankruptcy Court's contrary conclusion that whether a bankruptcy default clause should be treated as an invalid *ipso facto* clause depends on whether the contract is executory or an unexpired lease.  *See* SPA-11 – SPA-12.

mortgage.  The court in *Gaslight Village sua sponte* considered whether sections 541 and 363(*l*) invalidated an *ipso facto* provision that would have caused rents to flow to the secured lender under the mortgage upon a bankruptcy filing, noting that "[s]ections 363 and 541 expressly denounce so-called *ipso facto* clauses which terminate the debtor's interest in the property."  *Id.* at 875.  The court ultimately held that a separate *prepetition* payment default—and not the bankruptcy filing itself—permitted the secured creditor to recover rents under the mortgage.  *Id. Gaslight Village* demonstrates, however, that sections 363(*l*) and 541 invalidate *ipso facto* clauses in non-executory contracts, such as the Homart Note.

NYSCRF embraces the Bankruptcy Court's criticism of *Rose v. General Motors Acceptance Corp. (In re Rose)*, 21 B.R. 272 (Bankr. D.N.J. 1982), as failing to explain Congress's express mention of *ipso facto* clauses in connection with executory contracts and unexpired leases in section 365(e)(1).  NYSCRF Br. at 21 (citing SPA-12–13 n. 12).  But, like the Bankruptcy Court, NYSCRF overlooks *Rose*'s refutation of the notion that Congress singled out executory contracts for special treatment:

> Under the Bankruptcy Code, there is no statutory mandate that bankruptcy-default clauses are valid and enforceable.  The only Congressional statement is clear that *in most, if not all, instances, such clauses are not enforceable.  Also, cf. sections 363(l) and 541(c)(1)(B) of the Bankruptcy Code, where bankruptcy-default clauses are not given effect.  Thus, there is simply no reason to assume that Congress intended to make these clauses enforceable only in non-executory contracts.*

14

*Rose*, 21 B.R. at 276 (emphasis added).

Moreover, NYSCRF posits that *Rose* stands for the proposition that an *ipso facto* clause should not be enforced if it would violate a principle of bankruptcy law, such as providing a debtor a "fresh start" and that "[t]here are no principles of bankruptcy law, specific or amorphous, that are violated by the enforcement of the Default Provision here."   NYSCRF Br. at 22.   Not only is NYSCRF wrong to ignore the Bankruptcy Code structure that explicitly invalidates the *ipso facto* clause here, but the enforcement of the default provision in this case would violate the federal bankruptcy policy against penalizing debtors for merely seeking protection under the bankruptcy laws.   The Supreme Court has recognized a paramount federal interest in preventing "a party from receiving a windfall merely by reason of the happenstance of a bankruptcy."   *Butner v. United States*, 440 U.S. 48, 55 (1979) (citing *Lewis Bank v. Mfrs. Nat'l Bank*, 364 U.S. 603, 609 (1961)). Unquestionably, the enforcement of the *ipso facto* provision in this case (and cases like it) would impermissibly penalize debtors for merely filing for bankruptcy relief and would award windfalls to creditors based solely on the happenstance of a bankruptcy.

Finally, NYSCRF fails in its attempts to distinguish *In re W.R. Grace & Co.*[13]   *See* NYSCRF Br. at 22–23 (arguing that *W.R. Grace* is distinguishable because the creditors there were unsecured and that, unlike here, the company's solvency was a point of contention).   Neither a debtor's solvency nor a creditor's unsecured or secured status drives the *threshold* issue whether the Bankruptcy Code permits a creditor to claim interest at the default rate based merely upon an *ipso facto* clause.   Deciding exactly that issue, the *W.R. Grace* court declined to enforce an *ipso facto* clause in a non-executory loan agreement that purported to provide a contractual entitlement to postpetition default-rate interest upon the filing of a bankruptcy case.   *W.R. Grace*, 2012 WL 2130981, at *75.[14]   The *W.R. Grace* court's analysis is sound, persuasive, and should be followed here.

### C.  Congress Evinced Clear Intent in the Bankruptcy Code and Legislative History To Broadly Invalidate *Ipso Facto* Clauses.

NYSCRF argues that, "[a]s the Bankruptcy Court properly observed, had Congress intended to invalidate all *ipso facto* provisions it could have done so." NYSCRF Br. at 17 (citing SPA-12 n.12).   This is a straw man because GGP LP has

---

[13]  475 B.R. 34, Nos. 11-199, 11-200, 11-201, 11-202, 11-203, 11-207, 11-208, 9-644, 09-807, 2012 WL 2130981 (D. Del. June 11, 2012), *appeal docketed*, No. 12-11521 (3d. Cir. Mar. 5, 2012).  The January 30, 2012 *W.R. Grace* decision cited in GGP's opening brief was subsequently amended and superseded by *In re W.R. Grace & Co.*, 475 B.R. 34 (D. Del. 2012), *appeal docketed*, No. 12-11521 (3d Cir. Mar. 5, 2012).  The amended decision did not change the court's reasoning or holding regarding *ipso facto* clauses.

[14] Bankruptcy Reporter pagination not yet available.

not argued that Congress intended to invalidate all *ipso facto* provisions. Congress made clear that *ipso facto* provisions would continue to be enforced in certain specific situations[15] notwithstanding the generally broad prohibition on *ipso facto* clauses in sections 541(c)(1)(B), 363(*l*), and 365(e). The *ipso facto* provision in the Homart Note, however, does not fall within those specific, limited exceptions in the Bankruptcy Code, and NYSCRF does not contend otherwise.

The legislative history of section 541 reflects congressional intent to broadly invalidate *ipso facto* clauses.[16] Further, as the court in *Lehman* recognized, "[t]he Bankruptcy Code of 1978 effected a change in the treatment of contract or lease clauses that "sought to modify the relationship of contracting parties due to the

---

[15] As described in GGP LP's opening brief, during the enactment of the Bankruptcy Code in 1978, Congress generally invalidated *ipso facto* clauses in sections throughout the Bankruptcy Code except in certain sections that expressly enforce such clauses. *See* GGP LP Br. at 25 n.21 (listing provisions that expressly enforce *ipso facto* clauses).

[16] "Subsection (c) invalidates restrictions on the transfer of property of the debtor, in order that all the interests of the debtor in property will become property of the estate. The provisions invalidated are those that restrict or condition the transfer of the debtor's interest, and those conditioned on the insolvency or financial condition of the debtor, on the commencement of a bankruptcy case . . . ." H. REP. No. 95-595, at 368 (1977); S. REP. No. 95-989, at 83 (1978). Moreover, the National Bankruptcy Review Commission in 1996 noted that the "inclusion of [the prohibitions on the enforcement of *ipso facto* provisions] in the Bankruptcy Code was one of the primary achievements of the Bankruptcy Reform Act of 1978 and was considered by the Commission on the Bankruptcy Laws to be among its 'major recommendations.'" Working Group on Small Business, Partnerships, and Single Asset Real Estate Proposal #3: Effect of a General Partner's or LLC Member's Bankruptcy Filing (1996) (citing Report of the Comm'n on the Bankruptcy Laws of the United States, Part I at 17 (1973)).

filing of a bankruptcy petition—so called ipso-facto clauses.  It is now axiomatic that *ipso facto* clauses are unenforceable in bankruptcy." *In re Lehman Bros. Holdings Inc.*, 452 B.R. 31 (Bankr. S.D.N.Y. 2011) (citing to sections 541 and 365) (internal citations omitted).

## III.  SECTION 1123 DOES NOT COMPEL PAYMENT OF INTEREST AT THE DEFAULT RATE.

NYSCRF wrongly interprets section 1123(d) to mean that because the Homart Note was reinstated under the plan, section 1123(d) obligated to GGP LP to pay interest at the Default Rate as part of the cure payment.  Section 1123(d) imposes no such obligation.[17]

The default rate, in this case, stems solely from the application of the *ipso facto* clause in the Homart Note.  Because sections 541(c)(1)(B) and 363(*l*) render *ipso facto* clauses, such as the one contained in the Homart Note, invalid and unenforceable,  "defaults" stemming from the application of an *ipso facto* clause are not the kind that must be cured.  Section 1123(d) expressly provides that "*if* it is proposed in a plan to cure a default," then the debtor must cure the default in accordance with the contract.  *See* 11 U.S.C. § 1123(d) (emphasis added).  But nothing in section 1123(d) compels a debtor to cure a default that the Bankruptcy

---

[17] Section 1123(d) provides, "Notwithstanding subsection (a) of this section and sections 506(b), 1129(a)(7), and 1129(b) of this title, if it is proposed in a plan to cure a default the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law."

Code has *already* invalidated elsewhere.  Adopting NYSCRF's interpretation of section 1123(d) would engraft a validation of *ipso facto* "defaults" on the statute that cannot be found in its plain text and would contravene the express invalidation of *ipso facto* clauses in sections 363(*l*) and 541(c)(1)(B).[18]

Indeed, section 1123(d) was enacted as a legislative response to the Supreme Court's decision in *Rake v. Wade*, 508 U.S. 464 (1993), which held that the Bankruptcy Code required a debtor to pay compound interest on its mortgage arrearages to be cured under the debtors' chapter 13 plans notwithstanding that neither the contract nor applicable state law provided for such interest.  *Rake*, 508 U.S. at 474–75.  Congress enacted section 1123(d) thereafter to ensure that a creditor would not receive "a court contrived windfall" and clarified that the purpose of section 1123(d) was to ensure that "a cure pursuant to a plan should operate to put the debtor in the same position as if the default had never occurred."  H. REP. No. 103-834, at 55 (1994).  Applying section 1123(d) as suggested by NYSCRF would create the very windfall result that Congress was trying to avoid when it enacted section 1123(d).  Section 1123(d) does not resuscitate an *ipso facto* provision that the Bankruptcy Court has expressly invalidated.

---

[18] The lead-in to section 1123(d) states that it applies notwithstanding only four sections of the Bankruptcy Code—1123(a), 506(b), 1129(a)(7), and 1129(b). Nothing in section 1123(d)'s preamble suggests that it also should be read as an exception to sections 541(c)(1)(B) or 363(*l*), which invalidate the *ipso facto* clause in the Homart Note and its consequences.

None of the section 1123(d) cases that NYSCRF cites involve circumstances where, as here, the debtor's "default" was an *ipso facto* default based on the bankruptcy filing itself.  Instead, each involved a prepetition default for which default-rate interest was triggered by something other than an *ipso facto* provision.  Thus, the default rates in those cases stemmed from the prior default, not the imposition of an unenforceable *ipso facto* clause.  Nothing in the Bankruptcy Code (or applicable nonbankruptcy law) otherwise invalidated the enforceability of the prepetition defaults at issue in those cases.  *See In re Sagamore Partners, Ltd.*, 2012 WL 2856104 (Bankr. S.D. Fla. July 10, 2012) (prepetition default); *In re Moody Nat'l SHS Houston H, LLC*, 426 B.R. 667 (Bankr. S.D. Tex. 2010) (same); *In re 1 Ashbury Court Partners, L.L.C.*, 2011 WL 4712010 (Bankr. D. Kan. Oct. 5, 2011) (same); *In re Johnston*, 2004 WL 3019472 (Bankr. N.D. Iowa Dec. 20, 2004) (same).   Consequently, those courts never decided whether section 1123(d) requires a debtor to cure an *ipso facto* default and thus pay the resulting default rate.

## CONCLUSION

The Court should reverse and hold that NYSCRF is not entitled to default-rate postpetition interest.

Dated:   New York, New York
             September 12, 2012

/s/ Gary T. Holtzer
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Marcia L. Goldstein
Gary T. Holtzer
Adam P. Strochak

*Attorneys for Appellant*
*GGP Limited Partnership*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitations of FED. R. APP. P. 32(a)(7)(B) because this brief contains 5223 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii), as counted by Microsoft Word, Office XP, the word processing software used to prepare this brief.

This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word, Office XP, Times New Roman, 14 point.

*/s/ Gary T. Holtzer*
Gary T. Holtzer, Esq.
*Attorney for Appellant*
*GGP Limited Partnership*